FILED
2014 Feb-07 AM 11:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA NORTHEASTERN DIVISION**

**ALISHA AMBROSE,**

**Plaintiff,**

**v.**

**CAROLYN W. COLVIN, Acting Commissioner, Social Security Administration,**

**Defendant.**

**Case No.: 5:12-CV-595-VEH**

## MEMORANDUM OPINION

The plaintiff, Alisha Ambrose, brings this action pursuant to the provisions of 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for disability insurance benefits and Supplemental Security Income. Ambrose timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 42 U.S.C. § 405(g). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

## I. STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end, this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Id.* (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. This court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Id*. Even if the court finds that the evidence preponderates against the Commissioner's decision, the court must affirm if the decision is supported by substantial evidence. *Id.*

Unlike the deferential review standard applied to the Commissioner's factual findings, the Commissioner's conclusions of law are not presumed to be valid. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Therefore, the Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991). This

includes the Commissioner's application of the proper legal standards in evaluating Ambrose's claim. *Martin*, 894 F.2d at 1529.

## II. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

Social Security regulations outline a five-step process that is used to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). The Commissioner must determine in sequence:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) whether the claimant has a severe impairment or combination of impairments;

(3) whether the claimant's impairment meets or equals the severity of an impairment in the Listing of Impairments;[1]

(4) whether the claimant can perform any of his or her past work; and

(5) whether there are significant numbers of jobs in the national economy that the claimant can perform.

*Winschel v. Comm'r of Soc. Sec*, 631 F.3d 1176, 1178 (11th Cir. 2011). The evaluation process continues until the Commissioner can determine whether the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). A claimant who is doing substantial gainful activity will be found not disabled at step one. 20 C.F.R. §§ 404.1520 (a)(i), 416.920(a)(4)(i). A claimant who does not have a severe impairment will be found not disabled at step two. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A claimant with an impairment that meets or equals one in the Listing of Impairments will be found disabled at step three. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

Prior to considering steps four and five, the Commissioner must assess the claimant's residual functional capacity (RFC), which will be used to determine the claimant's ability to work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). A claimant who can perform past relevant work will be found not disabled at step four. 20 C.F.R.

---

[1] The Listing of Impairments, ("Listings") found at 20 C.F.R. Part 404, Subpart P, Appendix 1, are used to make determinations of disability based upon the presence of impairments that are considered severe enough to prevent a person from doing any gainful activity. 20 C.F.R. § 404.1525.

§§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At step five the burden shifts to the Commissioner to show other work the claimant can do. *Foot v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). To satisfy this burden the Commissioner must produce evidence of work in the national economy that the claimant can do based on the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1512(f), 416.912(f). A claimant who can do other work will be found not disabled at step five. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920 (a)(4)(v). A claimant who cannot do other work will be found disabled. *Id.*

In the present case, the Administrative Law Judge (ALJ) determined Ambrose was not engaged in substantial gainful activity, and found she had the severe impairments of "early avascular necrosis of the right hip; degenerative disk disease of the lumbar spine; osteoarthritis; and anxiety/depression." R. 12. The ALJ concluded Ambrose did not suffer from a listed impairment. R. 12. The ALJ found Ambrose had the residual functional capacity (RFC) to perform a modified range of light work with a sit/stand option. R. 13. He also found Ambrose would need "a low stress job involving simple work related decisions and working with things instead of people," but she would be able to "handle occasional interactions with supervisors, co-workers, and the general public." R. 13.

When a claimant is not able to perform the full range of work at a particular exertional level, the Commissioner may not exclusively rely on the Medical-Vocational Guidelines ("the grids") to establish the presence of other jobs at step five.[2] *Foote*, 67 F.3d at 1558-59. The presence of a non-exertional impairment (such as pain, fatigue, or mental illness) also prevents exclusive reliance on the grids. *Id.* at 1559. In such cases, "the [Commissioner] must seek expert vocational testimony." *Id*. Based on Ambrose's RFC and testimony from a vocational expert (VE), the ALJ found Ambrose could perform her past relevant work as a parts inspector. R.17, 51. The ALJ also made an alternate finding at step five that Ambrose could perform other jobs existing in the national economy. R. 18, 51-52. Therefore, the ALJ found she was not disabled. R. 19.

## III. FACTUAL BACKGROUND

Ambrose filed applications for a period of disability, disability insurance benefits, and Supplemental Security Income (SSI) on August 6, 2008, and alleges she became disabled on December 1, 2007. R. 10. Ambrose was 39 years old at the time of the ALJ's decision. R. 36. She has a high school education, and past relevant work

---

[2] The Medical-Vocational Guidelines, found at 20 C.F.R. Part 404, Subpart P, Appendix 2, are used to make determinations of disability based upon vocational factors and the claimant's residual functional capacity when the claimant is unable to perform his vocationally relevant past work. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(a). Such determinations, however, are only conclusive when all of the criteria of a particular rule are met. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(a).

that included parts inspector, receptionist, security guard, switchboard operator, trim installer, waitress, and cashier. R. 49-50.

Ambrose testified she is primarily disabled due to pain in her hips and knees. R. 38. She testified that her medications, inability to get adequate rest, pain, and problems with mobility prevent her from doing anything on a full-time basis. R. 38. Ambrose testified she is unable to stand for any length of time because of back pain. R. 38. She testified she could stand for 30 to 40 minutes, and sit for 30 minutes at a time without problems. R. 38-39. She testified she could walk for one block. R. 39. She testified that her pain was generally at a level of five with medications, and around an eight without medications. R. 41. She testified she cares for her two-year-old child with help. R. 41. Ambrose testified that her anxiety and depression caused mood swings, and that she became stressed out around people. R. 43. She also testified that she suffered from short term memory loss, which interfered with her ability to work. R. 46.

Medical records show Ambrose was treated by Dr. Laurence Schwartz at Advanced Orthopaedics from August 2004 until May 2006. R. 169-224. An MRI scan of Ambrose's right knee on June 10, 2005, showed avascular necrosis of the lateral femoral condyle without subchondral collapse. R. 183. An MRI on February 2, 2006, of Ambrose's right hip showed early vascular necrosis without flattening of the right

femoral head or secondary osteoarthritic changes. R. 183. During her treatment, she was prescribed Percocet and received trigger point injections. Dr. Schwartz discharged Ambrose from treatment on May 6, 2006, because she had been argumentative and abusive to his staff at a previous visit, and because she had received pain medications from another provider. R. 175.

Ambrose was then treated by Dr. Angelina Alejandrino every one to two months through at least January 2010. R. 272-343. During her treatment by Dr. Alejandrino, Ambrose was prescribed Percocet or Lortab on a continuous basis. Dr. Alejandrino's treatment notes show Ambrose had tenderness in the lumbar spine, with paraspinal muscle spasms on a number of occasions. *Eg.* , R. 303, 305, 307, 314, 318, 324, 326, 329, 330, 333, 335, 336, and 338. Dr. Alejandrino's treatment notes also show Ambrose reported that her medications were working. On December 8, 2006, and July 6, 2007, it was noted Ambrose was doing well on her present medications. R. 291, 301. On August 22, 2008, it was noted Ambrose's pain medications "adequately control" her pain. R. 318.

In addition to the treatment records, Ambrose underwent a consultative physical evaluation by Dr. John Lary on October 10, 2008. R. 245-55. On physical examination, Dr. Lary found Ambrose's "back musculature appear[ed] normal to inspection and palpation." R. 248. Straight leg raise testing was normal bilaterally.

R. 248. Dr. Lary found Ambrose had normal range of motion of the arms and legs. R. 248. Ambrose was able to walk normally; heel walk and toe walk; and to both assume and arise from squat and kneeling positions. R. 248. Neurological testing was normal. R. 248. An x-ray of the right hip showed "minimal spurring of the acetabulum, i.e., essentially normal findings." R. 248. Dr. Lary diagnosed osteoarthritis and chronic arthralgia complaints, with preserved range of motion. R. 249. He opined Ambrose's "ability to sit, stand, walk, lift, carry, bend, squat, [and] reach," were "mildly impaired by joint and back pain complaints." R. 249.

## IV. ISSUES PRESENTED

Ambrose's only argument on appeal is that the ALJ did not properly evaluate the credibility of her subjective complaints consistent with the Eleventh Circuit Pain Standard. Pl.'s Br. 4.

## V. DISCUSSION

Ambrose argues the ALJ did not properly apply the Eleventh Circuit pain standard. In this circuit, a "pain standard" is applied "when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). The standard requires a claimant to show "evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from

that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Landry v. Heckler*, 782 F. 2d 1551, 1553 (11th Cir. 1986). "[W]hether objective medical impairments could reasonably be expected to produce the pain complained of is a question of fact . . . subject to review in the courts to see if it is supported by substantial evidence." *Id.*

"[A] claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). "If the ALJ decides not to credit such testimony, he must articulate explicit and adequate reasons for doing so." *Id*. However, the ALJ's credibility determination need not cite "particular phrases or formulations" as long as it enables the court to conclude that the ALJ considered the claimant's medical condition as a whole. *Foote*, 67 F.3d at 1562. "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Id.*

The ALJ found Ambrose's medically determinable impairments could reasonably be expected to cause her alleged symptoms. R. 14. Therefore, she met the Eleventh Circuit pain standard, and the ALJ was required to consider her subjective

complaints. After reviewing the medical evidence, the ALJ found Ambrose's allegations of disabling symptoms were not credible. R. 14.

In considering Ambrose's allegations of disabling symptoms, the ALJ remarked on inconsistencies between Ambrose's testimony and the medical records. He found Dr. Alejandrino's records, which show Ambrose's medications were effective in relieving her pain, were inconsistent with her allegations of disabling pain. R. 15-16. The ALJ also observed that Dr. Alejandrino's records show Ambrose consistently denied having any problems with memory. R. 16. The ALJ reasonably found this was inconsistent with her testimony of memory problems. R. 16. He found Ambrose's receipt of "unemployment compensation benefits until recently before the hearing" was inconsistent with her alleged disability, because to be eligible for those benefits an individual must be physically and mentally able to work. R. 16. The ALJ stated that although receiving unemployment compensation benefits would not automatically result in a denial of benefits, he considered it "a factor in weighing the credibility of the claimant's testimony as to that period." R. 17. The ALJ also noted Ambrose was terminated from her last job "because of issues with other employees, not because she was unable to perform the work." R. 17

The ALJ found the "mild or minimal findings" on objective tests rendered Ambrose's testimony less credible. R. 15. He observed that the MRI scan of

Ambrose's right hip "showed only early avascular necrosis," and that the x-rays taken by Dr. Lary "showed only minimal acetabular spurring." R. 15. The ALJ also commented on Dr. Lary's finding of only a mildly limited range of motion in the lumbar spine, with normal range of motion in all other joints. R. 16.

In considering Ambrose's allegations of anxiety and depression, the ALJ found they were not supported by the medical evidence. R. 16. He observed that Dr. Alejandrino's treatment notes show only "occasional complaints of depression and stress/anxiety," and that Ambrose reported that medications helped her depression. R. 16. The ALJ noted Ambrose had not been seen by a psychiatrist, psychologist, or any other type of mental health care professional. R. 16. He also found Ambrose's activities of daily living, which included caring for her two year old child, were not significantly limited by her depression and anxiety. R. 16.

As required by the Eleventh Circuit pain standard, the ALJ articulated specific reasons for discounting Ambrose's testimony of disabling symptoms. Those reasons are supported by substantial evidence. Because this court does not reweigh the evidence, there is no reversible error in the ALJ's credibility finding.

## VI. CONCLUSION

For the above reasons, the court concludes the ALJ's determination that Ambrose is not disabled is supported by substantial evidence, and that the ALJ

applied the proper legal standards in arriving at this decision. Accordingly, the Commissioner's final decision is due to be affirmed. An appropriate order will be entered.

**DONE** this the 7th day of February, 2014.

**VIRGINIA EMERSON HOPKINS**
United States District Judge